IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MEDTRONIC MEDICAL CR SRL,<br><br>*Plaintiff*,<br><br>v.<br><br>ELIESER FELICIANO SOTO; JOSÉ ENRIQUE SANTANA CRIADO; INNOVATIVE ENGINEERING CORP.; INNOVATIVE ENGINEERING, LLC,<br><br>*Defendants*. | Case No.:<br><br>Violation of the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. §§ 1961-68; the Act Against Organized Crime and Money Laundering, P.R. Laws Ann. tit. §§ 971, *et seq*.; fraud; breach of contract and damages; extra-contractual damages; unjust enrichment; breach of fiduciary duties. |

**VERIFIED COMPLAINT**

TO THE HONORABLE COURT:

COMES NOW Plaintiff, Medtronic Medical CR SRL ("Medtronic-CR"), through the undersigned counsel, and respectfully states, alleges and prays as follows:

**I.  NATURE OF THE ACTION, JURISDICTION, AND VENUE**

1.      This action arises under the Racketeer Influenced and Corrupt and Organizations Act, 18 U.S.C. §§ 1962 (a)-(d). The Court has jurisdiction pursuant to 18 U.S.C. § 1964. It has supplemental jurisdiction over the Puerto Rico law claims pursuant to 28 U.S.C. § 1367(a).

2.      This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2), inasmuch as this action is between citizens and companies of the Commonwealth of Puerto Rico and a foreign state corporation and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3.      Venue is proper under 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because the Defendants are subject to personal jurisdiction in this judicial district and Elieser Feliciano Soto and José Enrique Santiago Criado reside in this district.

## II.  THE PARTIES

4.      Plaintiff, Medtronic-CR is a Costa Rica limited liability company with its principal place of business in Coyol Alajuela, Costa Rica. Medtronic-CR manufactures orthopedic components used for spine surgery devices and spine surgery procedures, which are distributed and sold globally.

5.      Defendant Elieser Feliciano Soto ("Feliciano") is Medtronic-CR's former Plant Manager. He is of legal age and a resident of the Commonwealth of Puerto Rico.

6.      Defendant José Enrique Santana Criado ("Santana") is a former Medtronic-CR employee and contractor.  He is of legal age and a resident of the Commonwealth of Puerto Rico.

7.      Defendant Innovative Engineering Corp. is a corporation organized under the laws of the Commonwealth of Puerto Rico. According to the Puerto Rico Department of State records, the corporation's place of business was Metro Office Park Suite 204, Guaynabo, Puerto Rico 00969.

8.      Defendant Innovative Engineering LLC is a Puerto Rico limited liability company. According to the Puerto Rico Department of State records, the company's place of business is Mansiones del Caribe 375, Calle Topacio, Humacao, Puerto Rico 00791-5233.

9.      Innovative Engineering Corp. and Innovative Engineering LLC were both organized by Santana, who appears in public corporate records as authorized representative and President of the corporation and as administrator or the limited liability company. Upon information and belief, Innovative Engineering Corp. and Innovative Engineering LLC are operating as one and the same. Thus, hereinafter we refer to the entities jointly as "Innovative Engineering."

### III.   FACTUAL ALLEGATIONS COMMON TO ALL RICO COUNTS
### AND ALL OTHER CAUSES OF ACTION

10.     Plaintiff brings this action under the Racketeering Influence and Corrupt Organizations Act ("RICO Act") and other laws against the named Defendants. The basis of this action revolves around a scheme of fraudulent conduct that the conspiring Defendants engaged in through their enterprises and acts taken in furtherance of this defrauding scheme, which affect interstate or foreign commerce. As a consequence of their enterprise and conspiratorial actions, Defendants violated the RICO Act; committed fraud; breached contracts; converted monies paid to enterprises for their own use and possession; were unjustly enriched; and caused severe and on-going economic damages to Medtronic-CR's business operations.

11.     Medtronic-CR has been operating in Costa Rica since 2015. The company established its manufacturing facility in 2017 with over 100 employees and continued to expand its operations, growing to more than 500 professionals in 2019.

12.     As part of its expansion plans, in or around March 2018, Medtronic-CR set out to build a new manufacturing facility in Coyol Alajuela, Costa Rica. Feliciano as Site Director was in charge of overseeing the construction of Medtronic-CR's new manufacturing site.

13.     Upon information and belief, beginning in or about July 2018, Defendants Feliciano and Santana, acting in concert with Medtronic-CR's Principal Financial Analyst, Keylor Gutiérrez ("Gutiérrez") and other Medtronic-CR employees, all of whom either directly or indirectly aided or abetted their activities, willfully embarked on a series of schemes to steal approximately $7.4 million and defraud Medtronic-CR by means of various false pretenses and unlawful activities. Feliciano and Santana orchestrated two schemes that facilitated the misappropriation of Medtronic-CR's assets for their personal benefit.

14.     As part of the <u>first scheme</u>, Feliciano, Santana and Gutiérrez conspired to use and actually used Puerto Rico and Costa Rica legal entities (the "Entities'), organized by them and/or associated with them, for the purported provision of goods and services to Medtronic-CR, which were either never rendered or rendered at prices that substantially exceed the fair market value of equivalent goods and services. The Entities, which together with Feliciano, Santana and Gutiérrez, comprise the RICO enterprise are:

| Entity's Name | Place of Organization |
| --- | --- |
| Innovative Engineering | Puerto Rico |
| J &J Engineering Consulting Group Limitada, doing business as JFSJSC Engineering Consulting | Costa Rica |
| VG Eng. Services International, S.A. | Costa Rica |
| BMRM International Holding LLC | Costa Rica |
| Inmboliaria Desok, S.A. | Costa Rica |
| Multitransportes La Gloria | Costa Rica |
| La Gloria del Atlántico KG S.A. | Costa Rica |

15.     The Entities were specifically created by Feliciano, Santana, and Gutiérrez, under their names and that of several other Medtronic-CR employees, friends and/or relatives with the specific purpose of billing Medtronic-CR for goods and services that were never provided to Medtronic-CR or that were provided at substantially inflated prices.

16.     As Site Director in charge of overseeing the construction of Medtronic-CR's new manufacturing facility, Feliciano had the authority of approving on behalf of Medtronic-CR any and all purchase orders concerning the construction project that did not exceed $100,000. If the purchase orders exceeded $100,000, approval from Medtronic Puerto Rico Operations Co. ("Medtronic Puerto Rico") or from the parent company Medtronic, Inc. ("Medtronic") would be necessary.

17.     As part of the scheme, between October 2018 and February 2020, Feliciano personally authorized purchase orders issued by the Entities for purported services rendered and/or goods delivered to Medtronic-CR. Each of the Entities' purchase orders was devised by Feliciano, Santana and Gutiérrez to be below the approval authority limit of Feliciano to avoid higher level oversight and detection of Medtronic-CR. Subsequently, invoices were issued and applied against the open purchase orders. Medtronic-CR made payments amounting to approximately $5.7 million under the purchase orders approved by Feliciano and others under the first scheme.

18.     Feliciano willfully and with the intent to defraud Medtronic-CR approved purchase orders from the Entities, against which invoices were subsequently paid, knowing that the Entities had not rendered the services and/or delivered any goods or that the amounts invoiced under the purchase orders far exceeded the fair market value of equivalent goods and services.

19.     Once the purchase orders were approved by Feliciano, the Entities would invoice Medtronic-CR for goods and services supposedly provided to the project. The invoices under the approved and open purchase orders would be sent by electronic transmission to the Accounts Payable department in Medtronic Puerto Rico for processing. In many cases, because the invoices were submitted against previously approved purchase orders, they did not draw additional scrutiny from Medtronic-CR personnel and could be processed through the Accounts Payable department.

20.     As will be further detailed below, some of the fraudulent payments received by the Entities were electronically wire transferred from Medtronic-CR's bank account in Costa Rica to bank accounts opened by the Entities in banks located in Puerto Rico. Upon information

and belief, kickbacks paid to Feliciano by some of the Entities were also transferred from a personal bank account held by Feliciano in Costa Rica to a credit union account under Feliciano's name in the state of Illinois.

21.     A second scheme consisted of the use of an independent association known as *Asociación Solidarista de Empleados de Medtronic Medical CR Sociedad de Responsabilidad Limitada* ("ASE5TEK") to extract funds from ASE5TEK and Medtronic-CR for Feliciano's and Gutiérrez's personal benefit.

22.     ASE5TEK was funded by Medtronic-CR employees' contributions with a small match of funds by Medtronic-CR.  The account is held at a local Costa Rica bank and is outside of Medtronic-CR's control.

23.     A solidarity association, such as ASE5TEK, is common in Costa Rica and is utilized as a vehicle to invest/grow contributions for personal uses of the contributing employees.

24.     ASE5TEK was led by Medtronic-CR's Plant Assembler, who is the President of the Board, and Gutiérrez who was the Vice-President.  In that capacity, Gutiérrez had access to the bank accounts of ASE5TEK.

25.     Upon information and belief, on or around October 4, 2018, ASE5TEK began allowing Medtronic-CR to use its funds as a "revolving credit line" to purportedly expedite payments to the Entities and to actually circumvent internal Medtronic-CR disbursement controls (*i.e.*, vendor set-up and payment terms). Likewise, Gutiérrez conspired with Feliciano to extract funds from ASE5TEK, which as mentioned was also funded with Medtronic-CR matching contributions, to pay kickbacks to Feliciano, for Medtronic-CR employee "bonus" payments and other personal benefits (*i.e.*, personal automobile and living expenses), among others.

26.     Upon information and belief, Gutiérrez requested such funds directly from ASE5TEK via email and/or WhatsApp and the President of ASE5TEK's board would direct each disbursement to the intended recipient, including payments to Gutiérrez himself.

27.     Subsequent to the issuance of funds, Gutiérrez created invoices on ASE5TEK letterhead for generic services rendered (*i.e.*, "third-party services") for submission to and reimbursement by Medtronic-CR.  Certain invoices would also include a 3% fee charged by ASE5TEK for each third-party payment.

28.     Medtronic-CR has identified five of the Entities and two individuals associated with one of the Entities who received disbursements from ASE5TEK in the approximate amount of $1,736,150. The individuals who received disbursements from ASE5TEK are Gutiérrez and his aunt Mirta Maritza Azofeifa Garro.

29.     The amounts disbursed by ASE5TEK (some of which was reimbursed by Medtronic-CR) and unlawfully received by the Defendants and/or by the Entities under the two schemes mentioned above are the following:

| Entity Name/Person | Aggregate Amount Disbursed by Medtronic-CR under the First Scheme (USD) | Aggregate Amount Disbursed by ASE5TEK under the Second Scheme (USD) |
|---|---|---|
| JFSJSC Engineering Consulting | $ 2,100,000 | - |
| Innovative Engineering | $ 1,278,816 | - |
| VG Eng Services International | $ 2,351,812 | $508,020 |
| Inmboliaria Desok, S.A. | - | $ 751,465 |
| Keylor Gutiérrez Victor | - | $ 221,299 |
| Multitransportes La Gloria | - | $ 209,840 |
| La Gloria del Atlántico KG S.A. | - | $ 28,019 |
| Mirta Maritza Azofeifa Garro | - | $17,507 |
| **TOTAL** | **$ 5,730,628** | **$ 1,736,150** |

30.     This complaint seeks redress for the damages caused by Defendants under the first scheme, as well as damages that Feliciano and Gutiérrez caused Medtronic-CR under the second scheme.

31.     In or around October 30, 2017 Medtronic appointed Feliciano, who at that time was Medtronic Puerto Rico Plant Manager, as Medtronic-CR's Manufacturing Director.

32.     Medtronic-CR was, and still is, in expansion mode as Medtronic Inc., Medtronic-CR's parent company, shifts additional manufacturing away from other locations around the globe.

33.     On or around the time Feliciano was transferred to Medtronic-CR, he, Santana (a former Medtronic Puerto Rico employee and contractor), and Gutiérrez conspired and began orchestrating a scheme to defraud Medtronic-CR for their own benefit.

34.     Santana was the incorporator, resident agent, president and secretary of Innovative Engineering in Puerto Rico through which it had provided certain consulting and machinery repair services to Medtronic Puerto Rico. Santana met Feliciano when the former worked as an employee and contractor of Medtronic Puerto Rico.

35.     Feliciano was named Site Director of Medtronic-CR and placed in charge of overseeing the construction of Medtronic-CR's new manufacturing facility. As Site Director, Feliciano had the authority of approving purchase orders on behalf of Medtronic-CR that did not exceed $100,000. If the purchase order exceeded said amount, approval of Medtronic Puerto Rico or Medtronic. would be necessary. Once a purchase order was approved within Medtronic-CR's accounting system, invoices could be submitted to the Accounts Payable department against said purchase order(s) for processing and payment.

36.     Between October 2018 and September 2019, Feliciano approved 31 purchase orders for services supposed to be provided by Innovative Engineering to Medtronic-CR. The purchase orders contain vague descriptions, such as "engineering contractor." Other Medtronic personnel approved two (2) additional purchase orders for services supposed to be provided by Innovative Engineering to Medtronic-CR.

37.     Feliciano willfully and with the intent to defraud Medtronic-CR approved Innovative Engineering's 31 purchase orders, knowing that said enterprise would not render the services described in the purchase orders, never intended to render the referenced services, and/or that the amounts to be invoiced under the purchase orders far exceeded the fair market value of equivalent services.

38.     Once the 31 purchase orders were approved by Feliciano, Santana caused Innovative Engineering to invoice Medtronic-CR for the services supposedly provided to Medtronic-CR's expansion/construction project.

39.     In particular, between August 2018 and August 2019, Innovative Engineering submitted 478 invoices against the 31 purchase orders approved by Feliciano, and other Medtronic personnel.

40.     The range of Innovative Engineering's invoices fluctuated between $600.00 and $21,363.00. Because these invoices were submitted against previously approved purchase orders – each of which was within the approval authority of Feliciano – they did not draw additional scrutiny from Medtronic-CR personnel to result in payment. Feliciano and Santana willfully devised the purchase orders to be for amounts under the approval authority of Feliciano as a means to avoid the need to obtain higher level approval of other Medtronic executives.

41.     Most of the invoices submitted by Innovative Engineering state the name of subcontractors and relate to 26 named sub-contractors. As will be explained below, the same named sub-contractors appear in seven (7) of the other Entity's purchase orders.

42.     To facilitate Defendants' scheme, Feliciano instructed Medtronic-CR's Import/Export Coordinator to create any and all future purchase requisition(s) requested by Santana.

43.     Initially, the requisitions ordered by Santana were sent to a buyer for the latter's approval. However, in order to advance Defendants' scheme, Santana later instructed the Import/Export Coordinator to assign the requisitions to the Administrative Cost Center, which ended up being approved by Feliciano.

44.     The 478 invoices billed against Innovative Engineering's approved and open purchase orders were then sent to Accounts Payables in Medtronic Puerto Rico for processing after being approved by Feliciano. To further enable their scheme, Gutierrez also instructed the Import/Export Coordinator to approve all invoices submitted by Santana that were held up in the system awaiting release.

45.     Between December 2018 and November 2019, Medtronic-CR issued 35 payments to Innovative Engineering under the fraudulent purchase orders and invoices adding up to $1,278,816.38.

46.     Upon information and belief, Medtronic-CR did not receive any services in consideration for most the monies paid to Innovative Engineering under the bogus purchase orders and invoices approved by Feliciano.

47.     There are Puerto Rico banking ties to many of the above referenced fraudulent transactions. Indeed, all 35 payments made to Innovative Engineering, totaling $1,278,816.38,

were paid via wire transfer by Medtronic-CR to one of two bank accounts held by Innovative Engineering at Banco Popular de Puerto Rico ("BBPR").

48.     In other words, Feliciano and Santana's scheme went beyond manipulating and abusing Medtronic's vendor payment system. The two also orchestrated 35 direct wire transfers from Medtronic-CR's Costa Rican bank account to Innovative Engineering's BPPR account in Puerto Rico as represented in the table below:

| Processing Date | Amount Paid | Innovative Engineering BBPR Account Number |
|---|---|---|
| 12/06/2018 | $14,220.00 | XXXXXX531 |
| 12/19/2018 | $ 68,620.00 | XXXXXX165 |
| 12/27/2018 | $ 156,670.00 | XXXXXX165 |
| 01/03/2019 | $ 6,720.00 | XXXXXX165 |
| 01/11/2019 | $15,200.00 | XXXXXX165 |
| 02/08/2019 | $84,390.00 | XXXXXX165 |
| 02/28/2019 | $44,680.00 | XXXXXX165 |
| 03/14/2019 | $42,584.00 | XXXXXX165 |
| 03/20/2019 | $43,996.00 | XXXXXX165 |
| 04/04/2019 | $42,568.00 | XXXXXX165 |
| 04/16/2019 | $47,404.50 | XXXXXX165 |
| 05/02/2019 | $27,577.50 | XXXXXX165 |
| 05/01/2019 | $11,800.00 | XXXXXX165 |
| 05/15/2019 | $66,490.00 | XXXXXX165 |
| 05/17/2019 | $23,617.50 | XXXXXX165 |
| 06/18/2019 | $46,856.72 | XXXXXX165 |
| 06/25/2019 | $56,542.47 | XXXXXX165 |
| 07/02/2019 | $21,447.00 | XXXXXX165 |
| 07/09/2019 | $49,415.00 | XXXXXX165 |
| 07/16/2019 | $20,310.00 | XXXXXX165 |
| 07/23/2019 | $57,900.00 | XXXXXX165 |
| 07/30/2019 | $17,645.00 | XXXXXX165 |
| 08/06/2019 | $20,084.00 | XXXXXX165 |
| 08/13/2019 | $45,465.00 | XXXXXX165 |
| 08/20/2019 | $65,824.55 | XXXXXX165 |
| 08/27/2019 | $25,324.00 | XXXXXX165 |
| 09/03/2019 | $25,378.00 | XXXXXX165 |
| 09/03/2019 | $2,637.50 | XXXXXX165 |
| 09/10/2019 | $37,578.17 | XXXXXX165 |

| Processing Date | Amount Paid | Innovative Engineering BBPR Account Number |
|---|---|---|
| 09/17/2019 | $33,881.00 | XXXXXX165 |
| 09/23/2019 | $29,898.00 | XXXXXX165 |
| 10/01/2019 | $1,935.00 | XXXXXX165 |
| 10/08/2019 | $2,880.00 | XXXXXX165 |
| 10/22/2019 | $13,480.00 | XXXXXX165 |
| 11/26/2019 | $7,797.47 | XXXXXX165 |
| **Total** | **$ 1,278,816.38** | |

49.     Innovative Engineering was not the only enterprise used by Feliciano and Santana to steal from and defraud Medtronic-CR.

50.     J&J Engineering Consulting Group Limitada d/b/a JFSJSC Engineering Consulting ("JFS") was formed by Santana and Jose Manuel Figueroa Saez in Costa Rica on or around April 12, 2018.

51.     On or around August 9, 2019, JFS granted a general and unlimited power of attorney in favor of Feliciano and Gutiérrez. The referenced power of attorney evinces that Feliciano had a financial interest in and control over JFS.

52.     Between December 2018 and January 2020, Feliciano approved 24 purchase orders for services that were supposed to be provided by JFS to Medtronic-CR. The majority of the purchase orders approved by Feliciano contain vague descriptions, such as "engineering services," "engineering services sub-contractors fee," and "module and commission project". Only one of the 24 purchase orders provides specific details related to a transfer project.

53.     Only seven of the 24 purchase orders approved by Feliciano for services supposedly to be provided by JFS to Medtronic-CR include the name of subcontractors, whose names, coincidentally, are identical to the sub-contractors included in the purchase orders Feliciano approved for Innovative Engineering.

54.     Feliciano willfully and with the intent to defraud Medtronic-CR approved JFS's 24 purchase orders, knowing that said enterprise would not render the services described in the purchase orders, never intended to render most of the referenced services, and/or that the amounts invoiced under the purchase orders far exceeded the fair market value of equivalent services.

55.     Once the 24 purchase orders were approved by Feliciano, Santana and or Feliciano himself caused JFS to invoice Medtronic-CR for the services supposedly provided to Medtronic-CR's expansion/construction project.

56.     As they did with the purchase orders issued under Innovative Engineering's name, Feliciano and Santana made sure that all of JFS's purchase orders would be for amounts under the approval authority of Feliciano as a means to avoid the need to obtain higher level approval of other Medtronic-CR executives. The range of purchase orders fluctuated between $40,000.00 and $95,000.00.

57.     Between April 2019 and January 2020, JFS issued 25 invoices against the 24 purchase orders approved by Feliciano. The range of the invoices fluctuated between $30,500.00 and $95,000. JFS' invoices are not supported by names of contractors or timesheets.

58.     Between March 2019 and February 2020, Medtronic-CR issued 16 payments to JFS under the fraudulently issued purchase orders and invoices for a total amount of $2,100,000.00.

59.     Upon information and belief, Medtronic-CR did not receive any services in consideration for most the monies paid to JFS under the bogus purchase orders and invoices approved by Feliciano.

60.     At least one of the payments fraudulently obtained by JFS was made to a Puerto Rico financial institution. Medtronic-CR records show that, on or around March 1, 2019, $35,000 was wire transferred from Medtronic-CR's bank account in Costa Rica to a BBPR account held by JFS in Puerto Rico as payment for purported "engineering services" never rendered by JFS.

61.     Innovative Engineering and JFS were not the only enterprises used by Feliciano and Santana to steal from and defraud Medtronic-CR.

62.     Upon information and belief, other companies were organized in Costa Rica by a group of Medtronic-CR employees, their friends and/or relatives to illegally exact monies from Medtronic-CR. One of said companies, VG Engineering Services S.A. ("VG"), was formed in Costa Rica on February 18, 2018.

63.     Medtronic-CR suspects that VG was formed by friends and relatives of Gutiérrez as another vehicle to defraud Medtronic-CR by billing for services that were never rendered or rendered at substantially inflated prices. Upon information and belief, VG and Gutiérrez were aided and abetted by Feliciano.

64.     Between April 2019 and January 2020, Feliciano approved 27 out of 53 purchase orders issued by VG for services to be provided by that enterprise to Medtronic-CR, which services were either never provided by VG or were invoiced at amounts that far exceed the fair market value of the services actually rendered. 42 of the 53 purchase orders issued by VG contain vague descriptions such as "engineering and maintenance services" with no contractor's name. Only ten purchase orders provide specific details.

65.     As with Innovative Engineering and JFS, the range of VG's purchase orders were purposely kept under Feliciano's approval authority in order to avoid the intervention of

Medtronic-CR's higher ups. Specifically, the amounts of the 27 purchase orders approved by Feliciano ranged from $1,380.00 to $95,000.00.

66.     Between April 2019 and January 2020, Medtronic-CR issued 31 payments to VG, totaling $2,351,811.79. Most of the 106 invoices issued by VG, which fluctuated between $45.00 and $95,000.00, have vague descriptions such as "engineering and maintenance services" with no contractor's name.

67.     Upon information and belief, Medtronic-CR did not receive any services in consideration for most the monies paid to VG under the bogus purchase orders and invoices approved by Feliciano and the few services that were actually provided to Medtronic-CR were invoiced by VG at prices that substantially exceed the fair market value of equivalent services.

68.     La Gloria del Atlántico KG S.A. ("La Gloria del Atlántico") was another company created by Gutiérrez as part of his and Feliciano's schemes to defraud Medtronic-CR and ASE5TEK.  Specifically, upon information and belief Gutierrez used La Gloria del Atlántico to pay kickbacks to Feliciano for him to approve purchase orders for services purportedly provided by companies associated with Gutiérrez and/or owned by the latter's friends and relatives and/or for aiding and abetting Gutierrez's own schemes to defraud Medtronic-CR and ASE5TEK.

69.     As mentioned, as part of the second scheme, ASE5TEK disbursed a total of $28,019 to La Gloria del Atlántico. The referenced disbursements, which were made at Gutiérrez's behest, were received by La Gloria del Atlántico from ASE5TEK on the following dates:

| Disbursement Date | Amount |
|---|---|
| April 6, 2019 | $4,300 |
| August 17, 2019 | $11,900 (approx.) |
| August 26, 2019 | $11,900 (approx.) |

70.     Upon information and belief, neither ASE5TEK nor Medtronic-PR received any services in consideration for the payment of $28,019 made by ASE5TEK to La Gloria del Atlántico.

71.     Coincidentally, in May 2019, La Gloria del Atlántico deposited $5,000 to a Costa Rica bank account under Feliciano's name.  In addition, on July 31, 2019 and on August 31, 2019, La Gloria del Atlántico deposited $20,000 and $52,000, respectively, to the same Costa Rica bank account under Feliciano's name.

72.     Likewise, in September 2019, La Gloria del Atlántico deposited a total of $107,500 (in several small installments) to the same Costa Rica bank of Feliciano.

73.     For its part, in September 2019, JFS deposited a total of $20,000 to the same personal bank account of Feliciano in Costa Rica.

74.     Upon information and belief, the referenced deposits were part of the kickbacks paid by Gutierrez to Feliciano for aiding and abetting the schemes to defraud both Medtronic-CR and ASE5TEK.

75.     Multitransportes La Gloria, another company owned and controlled by Gutiérrez, also received disbursements from ASE5TEK in the approximate aggregate amount of $279,000. As mentioned, Gutierrez directed disbursements from ASE5TEK for purported services provided by bogus entities and contractors of Medtronic-CR, including himself.

76.     In or around February 2020, Medtronic-CR received information that Feliciano might be taking advantage of the rapid buildup of Medtronic-CR's facility to route money to one or more corporate vendors set up him.

77.     When confronted, Feliciano admitted to several personal vices that led to "bad decisions," including the misappropriation of assets for his personal benefit. Feliciano also admitted that he co-owns racehorses with Santana in Puerto Rico.

78.     Documents obtained by Medtronic-CR reveal that Feliciano and Santana purchased and financed the operation of a horse stable in Puerto Rico with the proceeds of their fraudulent activities.

79.     For instance, on February 1, 2020, Feliciano and Santana exchanged text messages, through WhatsApp, in which they conspired to issue a $12,000.00 purchase order to cover the costs of horses. In the first text of the thread sent by Santana to Feliciano, the former specifically refers to the issuance of another purchase order (in Spanish: "*Voy a sacar un PO mas pa esos caballitos,*" which translates to "*I will issue **another** PO for those little horses*")), which means that it was not the first time the individuals had engaged in that fraudulent activity.

80.     Further, the investigation uncovered dozens of text and WhatsApp messages exchanged between November 17, 2019 and February 12, 2020 which show Feliciano and Santana discussing the creation of companies to be added as Medtronic-CR's suppliers to extract money out for their personal benefit.

81.     Upon information and belief, in addition to the horse stable, Feliciano, Santana and Innovative acquired other real and personal property in Puerto Rico with the monies they misappropriated from Medtronic-CR.

82.     Upon information and belief, in order to launder part of the monies exacted from Medtronic-CR and, indirectly, from ASE5TEK, between July 2018 and February 2020, Feliciano transferred a total of $590,000 from a Costa Rica bank account held under his name to an account at Baxter Credit Union in Vernon, Illinois, also held under Feliciano's name.

## IV.  CAUSES OF ACTION

### COUNT I
### RACKETEER INFLUENCED AND CORRUPT AND ORGANIZATIONS ACT
### §§ 1962(a)-(d)

83.     The allegations of paragraphs 1 through 82 are incorporated herein by reference.

84.     Innovative Engineering is an enterprise operated by Santana and Feliciano for the purpose of defrauding Medtronic-CR in a racketeering scheme.

85.     Santana, Feliciano, and Innovative Engineering form an enterprise which engaged in, and whose activities affect, interstate and foreign commerce.

86.     Defendants and others agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Medtronic-CR.

87.     Pursuant to and in furtherance of their fraudulent scheme, Feliciano and Santana committed multiple related acts of conduct intent on defrauding Medtronic-CR by knowingly engaging in or attempting to engage in monetary transactions in criminally derived property and derived from the specified unlawful activity described below:

a.  Between December 2018 and January 2020, Feliciano engaged in a pattern of: (1) creating and approving approximately 81 fraudulent purchase orders under the names of Innovative Engineering, JFS, and VG; (2) aiding and abetting in the submission of approximately 609 false invoices to Medtronic-CR; and (3) inducing Medtronic-CR to issue at least 82 payments, totaling approximately $5.7 million, for services not rendered and/or rendered at prices that far exceed the fair actual value of the invoiced services.

- 18 -

b. Between December 2018 and January 2020, Santana engaged in a pattern of: (1) creating approximately 54 fraudulent purchase orders under the names of Innovative Engineering and JFS; (2) submitting approximately 503 false invoices to Medtronic-CR; and (3) inducing Medtronic-CR to issue at least 51 payments, totaling approximately $3.4 million, for services not rendered and/or rendered at prices that far exceed the fair actual value of the invoiced services.

c. Various foreign and interstate communications via email, wire, and/or phone, including, without limitation dozens of text and WhatsApp messages exchanged between November 17, 2019 and February 12, 2020, which show Feliciano and Santana discussing the creation of companies to be added as Medtronic-CR's suppliers to exact money from Medtronic-CR for Feliciano and Santana's personal benefit.

d. Withdrawing and converting monies for Feliciano and Santana's personal use, which were wire transferred from Costa Rica and were deposited in several BBPR accounts in Puerto Rico.

88.     These numerous acts constitute a clear pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5); this pattern took place over a period of more than a year.

89.     All Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in clear violation of 18 U.S.C. § 1962(c).

90.     Moreover, Feliciano and Santana used income that was derived from the above described pattern of racketeering activity in an interstate enterprise, in violation of 18 U.S.C. §

1962(a). Specifically, Feliciano and Santana intentionally and fraudulently used Medtronic-CR's money for their personal benefit.

91.     The Defendants also engaged in an enterprise whose activities affect interstate and foreign commerce, in violation of 18 U.S.C. § 1962(b). The Defendants have directly and indirectly acquired and maintained interests in and control of this enterprise through the pattern of racketeering activity described above, again in violation of 18 U.S.C. § 1962(b). Specifically, the Defendants' enterprise was formed with the goal of illegally obtaining millions of dollars from Medtronic-CR. These monies were used to, among other things, finance the operation of a horse stable in Puerto Rico and, upon information and belief, to purchase other real and personal property in Puerto Rico.

92.     As set forth above, the Defendants agreed and conspired to violate 18 U.S.C. §§ 1962(a)-(c), in direct violation of 18 U.S.C. § 1962(d). Specifically, Feliciano conspired with Santana and others to intentionally and fraudulently exact money from Medtronic-CR and acquire that money as a part of the herein described racketeering scheme.

93.     The Defendants have intentionally conspired and agreed to directly and indirectly use or invest income that was derived from a pattern of racketeering activity in an interstate and foreign enterprise, acquire or maintain interests in the enterprise through a pattern of racketeering activity, and conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

94.     The Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above. That conduct undoubtedly constitutes a conspiracy to violate 18 U.S.C. §§ 1962(a)-(c), in clear violation of 18 U.S.C. § 1962(d).

95.     As a direct and proximate result of Feliciano, Santana and Innovative Engineering's racketeering activities and violations of 18 U.S.C. § 1962(a)-(c), Medtronic-CR has been injured in its business and property in that Defendants have fraudulently misappropriated no less than $5,730,628.17 from Medtronic-CR, for services not rendered and/or rendered at prices that far exceed the fair actual value of the invoiced services.

96.     Therefore, Feliciano, Santana and Innovative Engineering are liable to Medtronic-CR under the RICO Act and must compensate Medtronic-CR for: (a) actual damages of no less than $5,730,628.17; (b) the total sum of no less than $17,191,884.50 which equals three times the amount of compensatory damages to cover all monies fraudulently misappropriated from Medtronic-CR and which are mandatory pursuant to the treble damages provision of 18 USCA §1962; (c) legal interest; (d) all costs of the captioned litigation; and (e) attorney's fees.

## COUNT II
## ACT AGAINST ORGANIZED CRIME AND MONEY LAUNDERING OF THE COMMONWEALTH OF PUERTO RICO
## 25 P.R. LAWS ANN. § 971, *et seq.*

97.     The allegations of paragraphs 1 through 96 are incorporated herein by reference.

98.     Innovative Engineering is an enterprise or business operated by Santana and Feliciano for the purpose of illegally misappropriating monies from Medtronic-CR through a pattern of organized criminal activity.

99.     Santana and Feliciano are associated individuals who, in turn, form an enterprise that engaged in, and participated in a pattern of organized criminal activity.

100.    Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Medtronic-CR and laundering money they had misappropriated from Medtronic-CR.

101.    Pursuant to and in furtherance of their illicit scheme, Feliciano and Santana committed multiple related acts of conduct intent on defrauding Medtronic-CR by knowingly engaging in or attempting to engage in monetary and financial transactions in criminally derived property and derived from the specified unlawful activity described below:

e.  Between December 2018 and January 2020, Feliciano engaged in a pattern of: (1) creating and approving approximately 81 fraudulent purchase orders under the names of Innovative Engineering, JFS, and VG; (2) aiding and abetting in the submission of approximately 609 false invoices to Medtronic-CR; and (3) inducing Medtronic-CR to issue at least 82 payments, totaling approximately $5.7 million, for services not rendered and/or rendered at prices that far exceed the fair actual value of the invoiced services.

f.  Between December 2018 and January 2020, Santana engaged in a pattern of: (1) creating approximately 54 fraudulent purchase orders under the names of Innovative Engineering and JFS; (2) submitting approximately 503 false invoices to Medtronic-CR; and (3) inducing Medtronic-CR to issue at least 51 payments, totaling approximately $3.4 million, for services not rendered and/or rendered at prices that far exceed the fair actual value of the invoiced services.

g.  Inducing Medtronic-CR to transfer monies from Medtronic-CR's Costa Rica bank account to BBPR as payments for services that were never rendered or that were invoiced at overtly excessive rates, which unlawfully obtained monies were destined in whole or in part for the personal benefit of Feliciano and Santana, or which was used, in whole or in part, to acquire and interest in or establish and operate a horse stable in Puerto Rico.

h.  Withdrawing and converting monies for Feliciano and Santana's personal use, which were wire transferred from Costa Rica and were deposited in several BBPR accounts in Puerto Rico.

102.  These numerous acts constitute a clear pattern of organized criminal activity pursuant to P.R. Laws Ann. tit. 25, § 975b(a)-(d); this pattern took place over a period of more than a year.

103.  All Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of organized criminal activity described above and received income derived directly or indirectly from any pattern of organized criminal activity, in clear violation of P.R. Laws Ann. tit. 25, § 975b(a), (c) and (d).

104.  Feliciano and Santana have directly and indirectly acquired and maintained interest in the conduct of the enterprise's affairs through the pattern of organized criminal activity described above, in clear violation of P.R. Laws Ann. tit. 25, § 975b(b).

105.  Further, Feliciano and Santana conspired to induce and induced other Medtronic-CR personnel to carry out several financial acts or transactions using assets originating or derived from, or linked with, a specific illegal activity intentionally, or cognizant of the fact that the financial transaction has been planned entirely or partially so as to conceal or dissemble the nature, location, origin, ownership, or control of the profits of the specific illegal activity in violation of the provisions of the laws of the Commonwealth of Puerto Rico, the federal government, or any of its states, in violation of P.R. Laws Ann. tit. 25, § 975b(e).

106.  Moreover, Feliciano aided and abetted Santana, Innovative, and JFS in their attempt to illegally exact millions of dollars from Medtronic-CR, in violation of P.R. Laws Ann. tit. 25, § 975b(g). These monies were used to, among other things, finance the operation of a

horse stable in Puerto Rico and, upon information and belief, to purchase other real and personal property in Puerto Rico.

107.    The Defendants were cognizant of the fact that their predicate acts were part of a pattern of organized criminal activity and agreed to the commission of those acts to further the schemes described above.

108.    As direct and proximate result of the Feliciano, Santana and Innovative Engineering's racketeering activities and violations of P.R. Laws Ann. tit. 25, § 975b(a)-(e) and (g), Medtronic-CR has been injured in its business and property in that Defendants have fraudulently misappropriated no less than $5,730,628.17 from Medtronic-CR, for services not rendered and/or rendered at prices that far exceed the fair actual value of the invoiced services.

109.    Therefore, Feliciano, Santana and Innovative Engineering are liable to Medtronic-CR under the Act Against Organized Crime and Money Laundering of the Commonwealth of Puerto Rico and must compensate Medtronic-CR for: (a) actual damages of no less than $5,730,628.17; (b) the total sum of no less than $17,191,884.50 which equals three times the amount of compensatory damages to cover all monies fraudulently misappropriated from Medtronic-CR and which are mandatory pursuant to the treble damages provision of P.R. Laws Ann. tit. 25, § 971h(d).

### COUNT III
### FRAUD (DOLO) IN THE INDUCEMENT
### PUERTO RICO CIVIL CODE, 31 P.R. LAWS ANN. § 3408
### AND/OR ARTICLE 1020 OF THE COSTA RICA CIVIL CODE

110.    The allegations of paragraphs 1 through 109 are incorporated herein by reference.

111.    Pursuant to Article 1221 of the Puerto Rico Civil Code, P.R. Laws. Ann. tit. 31, § 3408, a party is liable to another if he or she has fraudulently induced the other to enter into a contract that the other would not have perfected except for the fraud.  Likewise, under Article

1020 of the Costa Rica Civil Code, a party who induces another to enter into a contract through deliberate lies or omissions (dolo) must restore to the deceived party all fruits of the contract, which may be annulled.

112.    Feliciano and Santana made false material representations to Medtronic-CR with the intent to commit fraud and of inducing Medtronic-CR into issuing purchase orders in favor of Innovative Engineering and several other companies, including but not limited to JFS and VG.

113.    Feliciano and Santana intentionally made false and misleading representations, on behalf of Innovative Engineering, with knowledge of their falsity to the detriment of Medtronic-CR.

114.    Had it not been for Feliciano and Santana's insidious machinations and false representations Medtronic-CR would not have issued the bogus purchase orders to Innovative Engineering, JFS, VG and others.

115.    Medtronic-CR was induced by Defendants' false representations to rely on Feliciano, Santana, and Innovative's misrepresentations and fraudulent actions into paying Innovative more than one million dollars under purchase orders that were fraudulently obtained.

116.    The reliance of Medtronic-CR on Defendants misrepresentations was justifiable since they represented that the services were needed and rendered in connection with Medtronic-CR's expansion.

117.    As a result of Defendants' fraudulent actions and misrepresentations Medtronic-CR sustained damages of no less than $1,278,816.38, equivalent to all amounts paid to Innovative Engineering under the fraudulently obtained purchase orders.

## COUNT IV
## BREACH OF CONTRACT AND FRAUD (DOLO) IN THE PERFORMANCE
## PUERTO RICO CIVIL CODE, 31 P.R. LAWS ANN. § 3018
## AND/OR ARTICLE 702 OF THE COSTA RICA CIVIL CODE

118.    The allegations of paragraphs 1 through 117 are incorporated herein by reference.

119.    Article 1210 of the Puerto Rico Civil Code provides that parties to a contract bind themselves "not only with regard to the fulfillment of what has been expressly stipulated, but also with regard to all the consequences which, according to their character, are in accordance with good faith, use and law." P.R. Laws Ann. tit. 31, § 3375.

120.    Further, pursuant to Article 1054, a party found to have incurred in "fraud, negligence, or delay" or having acted contrary to its contractual obligations shall be liable "for the losses and damages caused thereby." P.R. Laws Ann. tit. 31, § 3018. In the same vein, Article 702 of the Costa Rica Civil Code provides that a party who breaches a contract is liable to the other contracting party for any and all damages caused by the breach.

121.    Between December 2018 and June 2019, Feliciano approved 31 purchases orders for services allegedly needed from Innovative in connection with MRC's expansion.

122.    Innovative received illegal payments totaling $1,278,816.38 for services that were either not rendered or which were rendered and invoiced at grossly exaggerated prices which far exceed the fair market value of equivalent services billed by legitimate companies.

123.    By submitting invoices for grossly inflated prices or by failing to actually perform any of the invoiced services, Innovative breached its contractual obligations as to Medtronic-CR and fraudulently performed thereunder.

124.    Innovative's fraudulent breach of its contractual obligations has injured Medtronic-CR in an amount of no less than $1,278,816.38.

## COUNT V
## DAMAGES
## PUERTO RICO CIVIL CODE, 31 P.R. LAWS ANN. §5141
## AND/OR ARTICLE 1045 OF THE COSTA RICA CIVIL CODE

125.     The allegations of paragraphs 1 through 124 are incorporated herein by reference.

126.     Puerto Rico Civil Code, Article 1802 provides that "any person who by act or omission causes damages to another through fault or negligence shall be obligated to repair the damage so done." P.R. Laws Ann. tit. 31, § 5141. Similarly, Article 1045 of the Costa Rica Civil Code provides that "[a]nyone who by malicious intent, fault, negligence or imprudence causes damage to another, is obligated to provide reparation along with damages."

127.     Feliciano, Santana, and Innovative Engineering have engaged in intentional and/or negligent acts or omissions that have caused and are causing damages to Medtronic-CR and are, therefore, obligated to repair that damage.

128.     Feliciano's, Santana's and Innovative Engineering's actions have been the proximate or adequate cause of the damages suffered and currently being suffered by Medtronic-CR.

129.     In particular, Feliciano, without authorization, and intentionally: (1) created and approved approximately 81 fraudulent purchase orders under the names of Innovative Engineering, JFS, and VG; (2) conspired to submit and aided and abetted in the submission of, approximately, 609 false invoices to Medtronic-CR; and (3) induced Medtronic-CR to issue approximately 82 payments to various Entities, totaling approximately $5,730,628.17 for payments of services never rendered or rendered at costs substantially higher than the fair market value of the services invoiced.

130.     Likewise, Between December 2018 and January 2020, Santana engaged in a pattern of: (1) creating approximately 54 fraudulent purchase orders under the names of

Innovative Engineering and JFS; (2) submitting approximately 503 false invoices to Medtronic-CR; and (3) inducing Medtronic-CR to issue at least 51 payments, totaling approximately $3.4 million, for services not rendered and/or rendered at prices that far exceed the fair actual value of the invoiced services.

131.    As a result of Feliciano, Santana, and Innovative Engineering's negligent acts or omissions they are responsible for compensating Medtronic-CR's actual damages, which are estimated in an amount of no less than $5,730,628.17.

**COUNT VI**
**UNJUST ENRICHMENT**

132.    The allegations of paragraphs 1 through 131 are incorporated herein by reference.

133.    A Puerto Rico claim for unjust enrichment consists of five elements: (1) existence of enrichment; (2) a correlative loss; (3) nexus between loss and enrichment; (4) lack of cause for enrichment; and (5) absence of a legal precept excluding application of enrichment without cause. *See Dantzler, Inc. v. Puerto Rico Ports Auth.*, 335 F. Supp. 3d 226, 254 (D.P.R. 2018); *Montalvo v. LT's Benjamin Records, Inc.*, 56 F.Supp.3d 121, 136 (D.P.R. 2014).

134.    In this case, Feliciano and Santana unjustly enriched themselves by misappropriating at least $5,730,628.17 from Medtronic-CR. There were no contracts between Medtronic-CR and either Feliciano or Santana that justified them receiving the amounts they conned from Medtronic-CR, and there is no basis in law or fact to exclude application of enrichment in this case.

135.    Feliciano's and Santana's enrichment was at the expense of Medtronic-CR. Feliciano's and Santana's illegal actions or omissions were the proximate cause of Medtronic-CR's monetary losses. In good conscience and equity, Feliciano and Santana must restitute the money they misappropriated from Medtronic-CR.

## COUNT VII
## BREACH OF THE DUTY OF DILIGENCE AND LOYALTY
## ARTICLE 189 OF THE COSTA RICA COMMERCE CODE

136.    The allegations of paragraphs 1 through 135 are incorporated herein by reference.

137.    Article 189 of the Costa Rica Commerce Code provides that officers and other administrators must comply with all obligations imposed by law with the diligence of a mandate and are jointly liable to the corporate entity for the damages caused by the breach of those duties.

138.    Article 189 of the Costa Rica Commerce Code further imposes on officers and administrators a duty of diligence and loyalty by which they must act in the best interests of the company and its shareholders and establishes that officers and administrators are jointly liable to the company for all damages caused by the breach of said duties.

139.    Article 189 also imposes joint liability on officers and administrators if they did not adequately oversee the business of the company or if, knowing of acts that are prejudicial, did not do what was possible to avoid said acts or to eliminate or ameliorate its consequences.

140.    At all pertinent times hereto Feliciano was employed as Medtronic-CR's Plant Manager and, therefore, as an administrator or officer of Medtronic-CR, he had fiduciary, loyalty, and diligence duties toward the company.

141.    Instead of faithfully observing his legal obligations under Article 189 of the Costa Rica Commerce Code, Feliciano actively participated in the misappropriation of Medtronic-CR's moneys as well as in all the fraudulent schemes described above.

142.    Feliciano knew that he was not discharging his diligence and loyalty obligations when he actively participated in the misappropriation of Medtronic-CR's moneys. Feliciano consciously disregarded his responsibilities, breaching his duty of loyalty by failing to discharge his fiduciary obligations in good faith.

143.    As a result of Feliciano's breach of fiduciary, loyalty and diligence duties he is responsible for compensating Medtronic-CR's actual damages, which are estimated in an amount of no less than $5,730,628.17.

## V.    PRAYER FOR RELIEF

WHEREFORE, Medtronic-CR respectfully demands judgment as follows:

A.    Against all Defendants for their violations of the RICO Act, 18 U.S.C. § 1962(a)-(d), in the total amount of no less than $17,191,884.50, which equals three times the amount of compensatory damages to cover all monies fraudulently appropriated from Plaintiff and is mandatory pursuant to the treble damages provision of 18 U.S.C. §1962;

B.    Against Innovative Engineering for fraud in the inducement under Article 1221 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 3408 or, alternatively, under Article 1020 of the Costa Rica Civil Code, in an amount of no less than $1,278,816.38;

C.    Against Innovative Engineering for breach of contract and fraud in the performance under Article 1054 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §3018 or, alternatively, pursuant to Article 702 of the Costa Rica Civil Code in an amount of no less than $1,278,816.38;

D.    Against all Defendants for damages pursuant to Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §5141 or, alternatively, pursuant to Article 1045 of the Costa Rica Civil Code, in an amount of no less than $5,730,628.17;

E.    Against Feliciano and Santana for unjust enrichment in an amount of no less than $5,730,628.17, plus interest and the costs of litigation;

F.    Against Feliciano for breach of fiduciary duties pursuant to Article 189 of the Costa Rica Commerce Code, in an amount of no less than $5,730,628.17.

G.      Against all Defendants an award of attorney's fees, costs, interest, and such other relief this Honorable Court may seem just and proper.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico this 2nd day of April, 2020.

**McCONNELL VALDÉS LLC**
270 Muñoz Rivera Avenue
Hato Rey, Puerto Rico 00918
P.O. Box 364225
San Juan, Puerto Rico 00936-4225
Telephone: (787) 759-9292
Fax: (787) 759-8282

*s/Arturo J. García Solá*
Arturo J. García Solá
USDC-PR No. 201903
ajg@mcvpr.com

*s/Leslie Y. Flores-Rodriguez*
Leslie Y. Flores-Rodriguez
USDC-PR No. 223601
lfr@mcvpr.com

*s/ María C. Cartagena Cancel*
María C. Cartagena Cancel
USDC No. 224204
mcc@mcvpr.com

*Attorneys for Medtronic Medical CR SRL*

## UNSWORN STATEMENT UNDER PENALTY OF PERJURY
## PURSUANT TO 28 U.S.C. § 1746

I, Ivonne Rocío Meléndez-McFarlane of legal age, married, Engineering Manager of

Medtronic Medical CR SRL ("Medtronic-CR"), and resident of San José, Costa Rica, hereby state

under penalty of perjury, pursuant to the Laws of the United States of America, that I have read

the foregoing Verified Complaint and that, to the best of my knowledge and belief and/or pursuant

to the information and documents in possession of Medtronic-CR, the facts alleged therein are true

and correct.

Executed in San José, Costa Rica , this 31st. day of March, 2020.

